## Piercy v. Commonwealth.

(Decided June 16, 1933.)

STROTHER KISER for appellant.

BAILEY P. WOOTTON, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Affirming.

Lawrence Piercy was indicted in the Johnson circuit court for the robbery of the Paintsville National Bank. On the trial of the case he was found guilty, and his punishment fixed at twenty years' imprisonment. He appeals.

The robbery of the bank occurred on June 9, 1932. Three armed men suddenly appeared in the bank, one

went to the cashier's window and made the officer hold up his hands; another went to a door leading to where another one of the officers was and had him hold up his hands; the third stopped at the door with a raised rifle in his hands, commanding every one to hold up their hands and remain still. There were two or three customers in the bank and three officers. They were all required to go into the bank vault and were confined there while the robbers looted the bank, taking about $26,000 in money and a large amount of bonds. Four or five persons who were in the bank testified that appellant was the man standing at the door with the rifle. They had never seen him before, and their identification was largely from his size and general appearance and was not absolutely positive; but one witness stated that this man at the door had a certain gold tooth which he observed when the man spoke to him, and that the defendant had such a gold tooth.

On the other hand, the defendant testified that he went to Lexington on June 5, and was there at the house of Mrs. Mame Trissler from that time until June 13, when he went to Mt. Sterling. He stayed at Mt. Sterling a day or so and then went to Ashland, where he was later arrested. The commonwealth proved that on this trip from Mt. Sterling to Ashland he had a large roll of $20 bills. The bank at Paintsville lost a large number of $20 bills in the robbery. He showed that before he left Mrs. Trissler's he borrowed from her $212, and in this way accounted for the money which he had and which he claimed was no more than what he had gotten from Mrs. Trissler. When they were impaneling the jury, counsel for defendant asked each of the jurors this question:

> "Suppose the commonwealth and myself should submit this case to you right now without any evidence offered on any side and the court should give you an instruction that unless you believed the defendant had been proved guilty beyond a reasonable doubt you should find him not guilty and you were asked to go to your room and bring back a verdict, what verdict would you bring in?"

To which question as many as six jurors answered that they could not make a verdict at all under those circumstances. The court then asked the jurors if they could give the defendant a fair and impartial trial according

to the law and the evidence., To which they replied in the affirmative. Counsel for defendant moved the court to order the jurors to stand aside because they had disqualified themselves. The court overruled the motion and he excepted. The defendant used fourteen of his peremptory challenges and did not peremptorily challenge the six jurors referred to.

The question which the counsel asked the jurors was really improper. If no evidence was introduced showing the defendant was guilty, it would be the duty of the court to tell the jury to find the defendant not guilty. The jury are sworn to try the case according to the law and evidence. The law of the case is that given the jury by the instructions. The answer of the jurors here simply showed that they did not know what would be the proper proceeding in such a case until they received the instructions of the court. Really the question should not have been allowed. It simply presented a question of law, which was for the court, not the jury. It is only the duty of the jury to render a true verdict under the law and the evidence. The jurors all stated that they could give the defendant a fair and impartial trial and by this they all meant that they would follow the instructions of the court under the evidence. There was therefore no substantial error here in refusing to make the six jurors referred to stand aside.

When the case opened before the jury, the counsel for defendant asked the commonwealth attorney to furnish him a list of his witnesses, and the commonwealth attorney thereupon gave him a list of the witnesses whose names were indorsed on the back of the indictment, which were all that he knew of. After the close of the testimony for the defendant the commonwealth attorney asked to introduce in rebuttal the testimony of Dr. J. A. Wells, Dr. W. R. Castle, and F. P. Blair, whose names were not on the list of witnesses above referred to. The defendant objected, and the commonwealth attorney then showed that he had just learned that these witnesses would testify to important facts. The court allowed the witnesses to be introduced, and the defendant excepted. These witnesses testified, in substance, that they saw the defendant in Paintsville on June 9, an hour more or less before the bank was robbed, and one of them testified to having had a conversation with him and to have recognized his features as those of the same

person when he was brought back to Paintsville for the examining trial. The defendant earnestly insists that this was testimony in chief and was erroneously allowed in rebuttal after he had closed his case and had established his alibi. The court instructed the jury that they could only consider this testimony in so far as it might affect the credibility of the defendant as a witness and for no other purpose. This court is unable to see that any substantial right of the defendant was prejudiced here. The defendant rested his case upon an alibi. In rebuttal the commonwealth had a right to meet this proof, and show that he was not at Lexington on June 9; the witnesses introduced in rebuttal in no way connected him with the bank robbery. They only proved that he was in Paintsville at the time he testified he was in Lexington. The testimony was properly admitted in rebuttal, and the record does not show that there was any motion for a continuance on the ground of surprise or for time to meet this new evidence. The ruling of the circuit court was therefore proper.

On the merits of the case the court cannot say that the verdict of the jury is palpably against the evidence. The credibility of the witnesses was for the jury, and there were many facts shown in the evidence discrediting the alibi attempted to be shown by the defendant. No other grounds of reversal are relied on.

Judgment affirmed.